## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KERRY ODGERS,** | : | **No. 3:15cv329** |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **PROGRESSIVE NORTHERN** | : | |
| **INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Kerry Odgers (hereinafter "plaintiff") asserts a state law breach of contract claim and several tort claims arising from an automobile accident with Defendant Progressive Northern Insurance Company's (hereinafter "Progressive") insured. Before the court for disposition is Progressive's motion to dismiss certain claims within plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the court will grant in part and deny in part Progressive's motion to dismiss.

## Background

On January 18, 2013, Progressive's insured, Rodrigo Solera, struck plaintiff with his automobile. (Doc. 1-1, Compl. (hereinafter "Compl.") ¶¶ 14-15). Specifically, Solera's 2011 Chevrolet Cruz ran over plaintiff as

she walked within a pedestrian crosswalk.  (Id.)  After Solera ran over plaintiff the first time, he placed his automobile in reverse and ran over plaintiff a second time.  (Id. ¶ 20).  Plaintiff screamed and pleaded with Solera to stop.  (Id. ¶ 21).  Solera, however, placed his automobile in drive and ran over plaintiff a third time, causing plaintiff severe injuries including a spiral fracture of the left tibia/fibula and multiple cuts, abrasions and swelling in her hips, ankles and feet.  (Id. ¶¶ 21-22; Doc. 6-1, state court compl. against Solera ¶ 11).

At the time of the accident, plaintiff resided alone, did not own an automobile, and was not an insured on any other automobile insurance policy.  (Compl. ¶¶ 24-37).  Accordingly, on February 13, 2013, plaintiff informed Progressive, Mr. Solera's automobile insurance company, that she would be filing a first-party claim for benefits.  (Id.)  Plaintiff intended to file her claim with Progressive pursuant to 75 PA. CONS. STAT. ANN. §1713(a), which allows plaintiff, a pedestrian, to recover first-party benefits from an insurance policy on any motor vehicle involved in her accident.

On February 22, 2013, Progressive responded that plaintiff would be required to complete an application for benefits, submit proof of residency, and sign a broad medical authorization release of information prior to the

2

processing of any first-party benefits claim. (Id. ¶¶ 38-39). Plaintiff submitted her first medical bill to Progressive on March 19, 2013. (Id. ¶ 43). Progressive, however, refused to process plaintiff's first-party medical benefits claim. (Id. ¶¶ 44-64). As such, plaintiff initiated a state court action against Progressive and Progressive's insured on April 18, 2013. (Id. ¶ 44).

Plaintiff's state court complaint contained all of the information Progressive requested to process plaintiff's first-party benefits claim. (Id. ¶ 45). Additionally, on May 10, 2013, plaintiff provided Progressive with three (3) months of her pay stubs, which indicated her residential address. (Id. ¶ 49). Progressive, however, engaged in a pattern and practice of dilatory tactics, including feigning ignorance of plaintiff's residence, resulting in the failure to approve plaintiff's first-party benefits claim. (Id. ¶¶ 51-64, 83). In fact, Progressive failed to approve or deny plaintiff's first-party benefits claim **for over a year** until a Court of Common Please of Lancaster County Judge issued an order in the underlying state court action compelling Progressive to produce its claims manuals and claims investigation notes. (Id. ¶¶ 79-82). Rather than produce these materials, on May 2, 2014, Progressive "performed an about-face and announced

that it would now accept plaintiff's claim for first-party benefits and begin paying the same." (Id. ¶ 83).

Based on these factual allegations, plaintiff filed a five-count complaint in the Court of Common Pleas of Lackawanna County on January 16, 2015. (Doc. 1, Notice of Removal ¶ 1). Plaintiff asserts the following claims: Count I-Breach of Contract; Count II-Bad Faith under 42 PA. CONS. STAT. ANN. § 8371; Count III-Breach of Fiduciary Duty; Count IV-Negligence; and Count V-Negligence Per Se.

Progressive removed the case to this court on February 16, 2015. Subsequent to removal, Progressive moved to dismiss Counts II-V of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff Kerry Odgers is a citizen of Pennsylvania. (Compl. ¶ 1). Defendant Progressive is incorporated under the laws of the State of Wisconsin with its principal place of business in Ohio. (Doc. 1, Notice of Removal ¶ 6). Additionally, the amount in controversy exceeds $75,000.

Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over the case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"); 28 U.S.C. § 1441 (A defendant can generally remove a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute).  As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Progressive filed a motion to dismiss specific counts within plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the

5

plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Progressive's motion to dismiss raises the following three issues: 1)

6

does Pennsylvania's Motor Vehicle Financial Responsibility Law

(hereinafter "MVFRL"), 75 PA. CONS. STAT. ANN. § 1797, preempt

plaintiff's bad faith claim under 42 PA. CONS. STAT. ANN. § 8371; 2) does

the "gist of the action" doctrine preclude plaintiff from asserting tort claims

and 3) does plaintiff's breach of fiduciary claim fail as a matter of law.  We

will address each issue in turn.

## 1. Bad Faith

Plaintiff contends Progressive violated Pennsylvania's insurance bad

faith statute, 42 PA. CONS. STAT. ANN. § 8371 (hereinafter "section 8371"),

and seeks punitive damages against Progressive.  Progressive asserts

plaintiff cannot seek punitive damages because Pennsylvania's MVFRL,

which does not allow punitive damages, preempts plaintiff's section 8371

bad faith claim.  At issue, therefore, is whether the MVFRL provides the

exclusive remedy for plaintiff's bad faith claim.

Section 8371 is a general statute authorizing recovery for an

insurance company's bad faith towards an insured.  It provides for several

remedies upon a finding of bad faith: (1) an award of "interest on the

amount of the claim" at a rate equal to "the prime rate of interest plus 3%";

(2) an award of "punitive damages against the insurer"; and/or (3) an

assessment of "court costs and attorney fees against the insurer."  42 PA. CONS. STAT. ANN. § 8371.

The MVFRL is a more specific statute requiring automobile insurers to provide medical benefit coverage "for reasonable and necessary medical treatment and rehabilitative services . . . " after a motor vehicle accident.[1]  75 PA. CONS. STAT. ANN. § 1712(1).  "In the event an insurer is found to have acted with no reasonable foundation in refusing to pay [first-party benefits] when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended."  Id. § 1798(b).  Additionally, if a court finds

_____

[1]  If an insurer wishes to challenge the reasonableness and necessity of an insured's medical treatment, it must contract with a peer review organization (hereinafter "PRO") for evaluation of the healthcare services provided to the insured.  75 PA. CONS. STAT. ANN. § 1797(b)(1). The insurer, healthcare provider or insured may challenge the initial determination of the PRO through a request for reconsideration.  Id. § 1797(b)(2).  If an insurer does not utilize the PRO process, the healthcare provider or the insured may challenge the PRO's initial determination before a court.  Id. § 1797(b)(4).  If either a PRO or a court finds the treatment was medically necessary, the insurer must pay to the healthcare provider the benefits owed with interest at the rate of 12% per year.  Id. §§ 1797(b)(5)-(6).  In the case of a court determination, the insurer must also pay "the costs of the challenge and all attorney fees." Id. § 1797(b)(6); see also id. § 1716 (providing that if an insurer is found to have acted in an "unreasonable manner" in refusing to pay medical benefits, the insurer shall pay, in addition to benefits owed, "a reasonable attorney fee based upon actual time expended").

8

the insurer's conduct wanton, that insurer "shall be subject to a payment of treble damages to the injured party."  Id. § 1797(b)(4).  Thus, under Pennsylvania's general insurance bad faith statute, section 8371, plaintiff may seek punitive damages, which are not available under the MVFRL.

The Third Circuit Court of Appeals, in predicting how the Pennsylvania Supreme Court would interpret these statutes, has stated that "the specific provisions of 75 PA. CONS. STAT. ANN. § 1797 must be deemed an exception to the general remedy for bad faith contained in 42 PA. CONS. STAT. ANN § 8371."  Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 67 (3d Cir. 1994) (citing Barnum v. State Farm Mut. Auto. Ins. Co., 635 A.2d 155, 159 (Pa. Super. Ct. 1993), rev'd on other grounds, 652 A.2d 1319 (Pa. 1994) (per curiam)); see also Hickey v. Allstate Prop. & Cas. Ins. Co., 722 F. Supp. 2d 609, 613 (M.D. Pa. 2010) (noting that "section 1797 preempts section 8371 where both are applicable").  Where "an insurer's malfeasance goes beyond the scope of section 1797, however, courts have reconciled the two statutes and found bad faith claims to supplement claims under section 1797."  Hickey, 722 F. Supp. 2d at 613.  As such, the relevant inquiry is whether plaintiff's claim falls within the purview of section 1797.

9

As previously stated, on January 18, 2013, Progressive's insured, Rodrigo Solera, ran over plaintiff three times as she walked within a pedestrian crosswalk.  (Compl. ¶¶ 14-15, 20-22).  The accident caused severe injuries to plaintiff including a spiral fracture of the left tibia/fibula and multiple cuts, abrasions and swelling in her hips, ankles and feet.  (Id. ¶¶ 21-22; Doc. 6-1, state court compl. against Solera ¶ 11).

Subsequent to the accident, plaintiff received extensive medical care and submitted a claim for first-party benefits to Progressive.  (Compl. ¶¶ 36-37, 73-78, 116).  Progressive, however, refused to process plaintiff's first-party benefits claim.  (Id. ¶¶ 44-64).  In response to Progressive's refusal to approve or deny her claim, plaintiff initiated a state court action against Progressive and Progressive's insured on April 18, 2013.  (Id. ¶ 44).

Over a year later, in April 2014, the state court trial judge issued an order compelling Progressive to produce its claims manuals and claims investigation notes.  (Id. ¶¶ 79-82).  Rather than produce these materials, Progressive "performed an about-face and announced that it would now accept plaintiff's claim for first-party benefits and begin paying the same." (Id. ¶ 83).  Thus, Progressive began processing plaintiff's first-party

10

benefits claim on May 2, 2014, **sixteen (16) months** after Progressive's insured ran over plaintiff.  (Id.)

Viewing plaintiff's allegations as true, plaintiff's bad faith claim does not fall within the purview of section 1797.  Plaintiff does not allege Progressive conducted an improper PRO.  Plaintiff's assertions do not involve the denial of first-party benefits regarding the reasonableness or necessity of medical treatment.  In fact, Progressive **never** denied first-party benefits.  Rather, plaintiff's complaint alleges Progressive created an environment conducive to allowing her first-party benefits claims to exist in a perpetual state of uncertainty.  (Id. ¶¶ 44-87).  Ergo, the court will deny Progressive's motion to dismiss plaintiff's bad faith claim.

## 2.  The "gist of the action" doctrine

Progressive next asserts that the "gist of the action doctrine" precludes plaintiff's breach of fiduciary duty, negligence and negligence per se claims because plaintiff's cause of action, if any, is a contract cause of action.  The gist of the action doctrine precludes a plaintiff from suing for a tort where the parties' actions arise from a contract.  In such cases, the plaintiff's remedy is a breach of contract action according to Progressive.

11

Plaintiff argues that the scope of the "gist of the action" doctrine is not so broad as to preclude her tort claims.  Plaintiff argues that her tort claims arise from Progressive's conduct regarding the manner in which Progressive discharged its statutory obligations to pay first-party benefits, not from the insurance contract itself.  (Compl. ¶¶ 25-87).  Specifically, Progressive waited almost sixteen (16) months after the accident before executing its statutory duty to pay first-party benefits.  (Id. ¶¶ 83, 136).  Additionally, Progressive's alleged dilatory tactics caused plaintiff harm including the Commonwealth of Pennsylvania's Department of Public Welfare assertion of a lien against any third-party recovery plaintiff may have obtained.  (Id. ¶¶ 88-114).

In Pennsylvania, the "gist of the action" doctrine "'maintain[s] the conceptual distinction between breach of contract and tort claims[,]' and precludes plaintiffs from recasting ordinary breach of contract claims as tort claims." McShea v. City of Phila., 995 A.2d 334, 339 (Pa. 2010) (quoting eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).  The Pennsylvania Superior Court in eToll found that the "gist of the action" doctrine precludes tort actions "(1) arising solely from a contract between the parties; (2) where the duties allegedly

breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." eToll, Inc., 811 A.2d at 19 (internal citations and internal quotation marks omitted); see also Bruno v. Bozzuto's, Inc., 850 F. Supp. 2d 462, 468-69 (M.D. Pa. 2012) (dismissing claims for negligent and fraudulent misrepresentation under the "gist of the action" doctrine because these claims arose from contractual duties).

The Pennsylvania Superior Court has explained that "[t]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Redevelopment Auth. v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. Ct. 1996) (*en banc*). Stated differently, the "gist of the action" is contractual where "the parties' obligations are defined by the terms of contracts, and not by the larger social policies embodied by the law of torts." Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001).

In the instant case, it appears that plaintiff's tort claims are separate and distinct from plaintiff's breach of contract claims. Plaintiff's tort claims

are based on Progressive's statutory duty to pay first-party benefits, not the insurance contract itself.  Moreover, we find it is too early to dismiss plaintiff's tort claims because they can be viewed as stand alone causes of action.

A certain tension exists, at the motion to dismiss stage, between Pennsylvania's "gist of the action" doctrine and Rules 8(d)(2) and (3) of the Federal Rules of Civil Procedure, which expressly condone pleading in the alternative.[2] PPG Indus., Inc. v. Generon IGS, Inc., 760 F. Supp. 2d 520, 528 (W.D. Pa. 2011).  District courts in Pennsylvania have noted that caution should be exercised in determining the "gist of an action" at the motion to dismiss stage. Id.; Southersby Dev. Corp. v. Twp. of S. Park, No. 14-1248, 2015 WL 1757767, at *16 (W.D. Pa. April 17, 2015);

---

[2] Rules 8(d)(2) and (3) state:

> (2) Alternative Statements of a Claim or Defense. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
> (3) Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency.

FED. R. CIV. P. 8(d)(2), (3).

14

Interwave Tech., Inc. v. Rockwell Automation, Inc., No. 05-398, 2005 WL
3605272, at *13 (E.D. Pa. Dec. 30, 2005); see also Weber Display &
Packaging v. Providence Wash. Ins. Co., No. 02-7792, 2003 WL 239141,
at *3-4 (E.D. Pa. Feb. 10, 2003) (noting that it is often premature to
determine the gist of a claim before discovery has been taken).

Therefore, the court will decline to dismiss plaintiff's tort claims at
this juncture.  Although, ultimately, Progressive may be correct that the
plaintiffs cannot pursue their breach of contract claim as well as their tort
claims, discovery will provide the parties and the court a better idea of
which, if any, claims are precluded.

## 3. Fiduciary Duty

Finally, Progressive contends plaintiff's breach of fiduciary duty
claim must be dismissed because Progressive does not owe plaintiff any
fiduciary duty.  Plaintiff argues that Progressive owed her a fiduciary duty
regarding the processing of her first-party benefits claim.  Plaintiff cites no
authority for this proposition and our research has uncovered none.
Indeed, the Third Circuit Court of Appeals requires the opposite
conclusion.

The Third Circuit Court of Appeals has stated that "[u]nder

15

Pennsylvania law, a fiduciary duty higher than the duty of good faith and fair dealing does not arise out an insurance contract until an insurer asserts a stated right under the policy to handle all claims asserted against the insured." Keefe v. Prudential Prop. & Sac. Co., 203 F.3d 218, 222 (3d Cir. 2000) (citing Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 322 (Pa. 1963)).  Moreover, "the Pennsylvania Supreme Court treats the breach of the contractual duty of good faith and breach of fiduciary duty synonymously in the context of insurance cases." Greater N.Y. Mut. Ins. Co. v. N. River Ins. Co., 872 F. Supp. 1403, 1409 (E.D. Pa. 1995) (citing Gedeon, 188 A.2d at 322); see also McMahon v. Med. Protective Co., — F. Supp. 3d —, 2015 WL 1285790, at *18, n.1 (W.D. Pa. March 20, 2015) (noting that a statutory bad faith claim subsumes a breach of fiduciary duty claim).  Thus, plaintiff's bad faith claim is the same as her breach of fiduciary duty claim.  Accordingly, plaintiff's breach of fiduciary claim will be dismissed.[3]

---

[3]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

**Conclusion**

For the foregoing reasons, Progressive's motion to dismiss will be granted in part and denied in part. The court will deny Progressive's motion to dismiss plaintiff's bad faith, negligence and negligence per se claims. The court, however, will dismiss plaintiff's breach of fiduciary duty claim. Thus, the remaining claims are: Count I-Breach of Contract; Count II-Bad Faith under 42 PA. CONS. STAT. ANN. § 8371; Count IV-Negligence and Count V-Negligence Per Se. An appropriate order follows.

**Date:   06/23/2015**               **s/ James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Court**

17