THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KERRY ODGERS, | : |
| | : CIVIL ACTION NO. 3:15-CV-329 |
| Plaintiff, | : (JUDGE MARIANI) |
| | : |
| v. | : |
| | : |
| PROGRESSIVE NORTHERN | : |
| INSURANCE COMPANY, | : |
| | : |
| Defendant. | : |

# MEMORANDUM OPINION
## I. INTRODUCTION

On February 16, 2015, Defendant removed Plaintiff's action filed in the Court of Common Pleas of Lackawanna County on or about January 16, 2015, to this Court based on diversity jurisdiction. (Doc. 1.) The underlying Complaint alleges injuries sustained when Plaintiff was struck by a vehicle driven by Rodrigo Solera which was insured by Defendant. (Compl. Doc. 1-1 ¶¶ 13-23.) The Complaint contains five counts: Count I for Breach of Contract/Good Faith and Fair Dealing; Count II for Bad Faith pursuant to 42 Pa. C.S. § 8371; Count III for Breach of Fiduciary Duty; Count IV for Negligence; and Count V for Negligence Per Se. (Doc. 1-1 ¶¶ 157-203.) Plaintiff's claim for Breach of Fiduciary Duty was dismissed on June 23, 2015. (Doc. 10.) With the Court's June 20, 2023, Order (Doc. 56), Defendant's Motion for Summary Judgment (Doc. 44) was granted as to Plaintiff's claims for Breach of Contract/Good Faith and Fair Dealing, Negligence and Negligence Per

Se. (*Id.* ¶ 3.) The Motion was denied as to Plaintiff's claim for Bad Faith in Count II. (*Id.*) Therefore, the trial scheduled to commence on November 4, 2023, (*see* Doc. 57) will address only Plaintiff's claim for Bad Faith.

Defendant filed five motions in limine on September 29, 2023. (Docs. 59, 61, 63, 65, 68.) Plaintiff filed the Motion to Take Judicial Notice of Defendant's Net Worth on October 25, 2023. (Doc. 74.) With this Memorandum Opinion, the Court addresses Defendant's Motion in Limine to Preclude Plaintiff's Counsel as a Witness (Doc. 67).

## II. BACKGROUND

Because this litigation has been protracted, a recitation of the background summary previously set out in the July 15, 2022, Report and Recommendation ("R&R") (Doc. 53) is helpful in analyzing the parties' motions.

> Odgers' complaint against Progressive stems from an accident in 2013 in which she was struck by a car in a pedestrian crosswalk. The driver of the car, Rodrigo Solera, ran Odgers over with his vehicle while she was crossing the street in a crosswalk. Odgers suffered severe injuries, including a fractured tibia/fibula, as well as multiple cuts, abrasions, and swelling in her hips, ankles, and feet. Following this accident, counsel for the plaintiff contacted Progressive, Solera's insurer, and informed Progressive that Odgers would be filing a claim for first-party benefits. Progressive responded and informed Odgers' counsel that Odgers would need to fill out an application for personal injury protection (PIP) benefits, submit proof of her residency, and sign and authorization to release her medical records.
>
> What then ensued was a somewhat contentious back-and-forth between Odgers and Progressive which led to state court litigation and the instant case. According to the plaintiff, Progressive refused to process her claim, which led her to file her first complaint in state court in April of 2013. However, the defendant contends that Odgers and her counsel refused to provide Progressive with information needed to process Odgers' claim. On this

2

score, Odgers' counsel sent a letter to Progressive on February 13, 2013, requesting the policy declarations for Solera's policy with Progressive. Progressive informed counsel that the insured would need to consent to the release of this information, and ultimately, Solera did not consent. Thus, about a week later, Progressive sent forms to Odgers for her to fill out a PIP application and medical authorizations so that it could investigate her claim for first-party benefits. Odgers' counsel informed Progressive that he was not willing to discuss the claim until he received the policy declarations from Progressive. Ultimately, on April 18, 2013, Odgers filed a complaint against Progressive in the Luzerne County Court of Common Pleas.

After Odgers filed her complaint, Progressive continued to send the PIP application and authorization forms for her to fill out. In addition, on June 20, 2013, counsel for Progressive sent a letter to the plaintiff's counsel, which stated that Progressive was willing to pay Odgers' medical bills under Solera's policy, but that Odgers needed to fill out the application and provide proof of her residence. Odgers' attorney responded, claiming that Odgers did not need to fill out an application because she was not an insured under the policy with Progressive. In this letter, Odgers' attorney characterized Progressive's approach to the claim—payment of Odgers' medical bills only after she filled out the requisite paperwork—as a refusal to pay benefits under the policy, even though Progressive's June 20, 2013 correspondence to Odgers' attorney explicitly stated that it was willing to pay Odgers' medical expenses once she filled out the paperwork. However, it appears that at least some of the information Progressive was asking for, such as the plaintiff's address, was contained in the plaintiff's state court complaint.

After about a year of back-and-forth regarding the information Progressive needed to process the claim, and following a discovery ruling by the state court which ordered Progressive to release certain information, Progressive sent a letter to Plaintiff's counsel on May 2, 2014 in which Progressive agreed to pay first-party medical benefits to Plaintiff for her medical expenses and income loss and to pay certain attorney's fees in settlement of Plaintiff's claim. (Doc. 30, ¶ 6). On May 16, 2014, Progressive's counsel reiterated Progressive's offer to Plaintiff's counsel, while at the same time stating that:

> Progressive's decision to afford coverage is by no means an admission of liability under the MVFRL nor is it an admission of wrongful conduct as alleged in the complaint. This matter could

3

> have been resolved with cooperation from you at the onset. Your unwillingness to cooperate prejudiced my client's ability to actively investigate this claim in order to determine if your client qualified for benefits under this policy. A simple conversation with your client or an application for benefits would have resolved this matter. Progressive is simply trying to resolve the claim.

(Id.) Given Progressive's offer to pay these benefits and attorney's fees, the motion to compel further discovery was deemed moot by the state court and that order was vacated by the court. (Doc. 30-3).

Ultimately, the plaintiff's medical bills and out of pocket expenses remained outstanding until October 29, 2015. Thus, in the interim, Odgers filed the instant case against Progressive in state court, and Progressive subsequently removed the case to federal court. (Doc. 1). On January 22, 2016, this federal court action was then stayed pending the conclusion of the ongoing state court litigation between the parties, and the stay was lifted on April 5, 2021. (Docs. 20, 22).

(Doc. 53 at 2-5.)

### III. STANDARD OF REVIEW

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). A court may exercise its discretion to rule in limine on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Nevertheless, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Tartaglione*, 228 F. Supp. 3d at 406.

Further, while motions in limine may serve as a useful pretrial tool that enables more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012). Indeed, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). Moreover, "*pretrial* Rule 403 exclusions should rarely be granted. . . . [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original).

Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. ANALYSIS

With the Motion in Limine to Preclude Plaintiff's Counsel as a Witness (Doc. 67), Defendant requests the Court to preclude Plaintiff's counsel from acting as a witness at the time of trial and to preclude Plaintiff from arguing that Defendant acted in bad faith prior to

30, 2013. (*Id.* at 4-5.) In its supporting brief, Defendant presents an argument only as to the first issue. (Doc. 68 at 2-4.) Because Defendant raises two issues in one motion, the Motion is clearly in violation of the Court's directive that each motion in limine "must be narrowly tailored [and] address a single evidentiary issue" (Doc. 57 ¶ 3). Therefore, the Court considers only the first issue and will deny Defendant's Motion without prejudice as to the second issue improperly raised.

On the issue of Plaintiff's counsel testifying at trial, Plaintiff responds that counsel will not be testifying at trial pursuant to the agreement of the parties set out in emails between Defendant's counsel and Plaintiff's counsel on November 30, 2021, and December 1, 2021. (Doc. 73 at 3-4, 7.) Plaintiff further asserts that the agreement disposes of the need for the pending motion and proposes that the Court enter an order granting the motion "to the extent that Plaintiff's counsel has agreed not to testify at trial." (*Id.* at 7.) The Court agrees that this is an appropriate disposition of the Motion in that there was clear agreement between the parties on the issue as of December 1, 2021.

## V. CONCLUSION

For the reasons discussed above, Defendant's Motion in Limine to Preclude Plaintiff's Counsel as a Witness (Doc. 67) will be granted in part and denied in part. The Motion will be granted insofar as Plaintiff's counsel will be precluded from testifying at trial pursuant to the agreement not to do so set forth in Plaintiff's counsel's December 1, 2021, email to Defendant's counsel. The Motion will be denied without prejudice as to the issue of

whether Plaintiff should be precluded from arguing that Defendant acted in bad faith prior to April 30, 2013, which is improperly raised in the Motion. A separate Order follows.

_____
Robert D. Mariani
United States District Judge